## In re HANNAN.

### No. 39592.

District Court, E. D. New York.

July 18, 1944.

See also D.C., 52 F.Supp. 667.

Powsner, Katz & Polinsky, of Brooklyn, N. Y., for bankrupt.

Joseph G. Myerson, of New York City, for objecting creditor.

GALSTON, District Judge.

These are cross-motions. An objecting creditor seeks to reverse the order of the referee granting a discharge of the bankrupt, and the bankrupt moves to confirm and grant his discharge.

On a voluntary petition, filed August 29, 1940, the bankrupt was adjudicated as such. The first meeting of creditors having been closed, November 8, 1941, was set as the last day for filing objections to the discharge. The petitioner filed objections, and hearings were held on January 8, 1942, June 11, 1942, and July 21, 1942. On September 15, 1943, the referee dismissed the specifications of objection and granted a discharge. From that order the creditor filed a petition for review. Judge Byers, by order dated December 22, 1943, remitted the matter to the referee for a report, "containing a discussion of the evidence and exhibits in connection with each specification, and a brief statement of his reasons for his conclusions in respect to each." Thereafter, and pursuant to such order, the referee filed his supplemental report on March 15, 1944, and an order was entered thereon on April 15, 1944. On April 21, 1944, the creditor filed a petition for review. These motions, for one reason or another, were not argued until July 7, 1944.

There are three specifications of objections to be considered. That marked "2" will be discussed first. In effect it alleges that the bankrupt obtained money on credit by making a materially false statement in

writing to the C. I. T. Corporation, the objecting creditor, respecting his financial condition, in that on or about May 29, 1939, he executed a written guarantee of the obligations of the Hale Motors, Inc., representing that on March 31, 1939, said Hale Motors, Inc., and the bankrupt had

(a) Cash on hand and in banks, the sum of $1,993.90
(b) Total assets of $30,461.13
(c) Net worth, $16,575.82

whereas it is alleged that the said Hale Motors, Inc. and the bankrupt had instead

(a) Cash on hand and in banks, $119.79
(b) Total assets, $23,051.63
(c) No net worth.

It is alleged that at the time of the filing of that financial statement the bankrupt and Hale Motors, Inc., were indebted to the C. I. T. Corporation in a substantial amount, not less than $12,000, and that thereafter the C. I. T. Corporation renewed the credit extended to the bankrupt, and in addition the bankrupt and the said Hale Motors, Inc., obtained property on credit consisting of new automobiles, delivered and paid for by C. I. T. Corporation, and received by the Hale Motors, Inc., and the bankrupt herein.

At the hearings upon the specifications of objection, it was stipulated that the bankrupt did business under the name "Hale Motors, Inc.," of which corporation he owned all the capital stock, and that all the liabilities for which he was personally liable in his bankruptcy in this proceeding are items which resulted from the transactions of that corporation. It was stipulated that the credit in each instance was extended on the faith of the financial statements filed.

To prove the falsity of the representations made, the books and other records of the bankrupt and the financial statement of a certified public accountant employed by the bankrupt, reflecting the condition of the bankrupt's affairs as at March 31, 1939, are in evidence. The ledger sheets as at that date show:

Account No. 103, Cash on Deposit, a debit balance of $119.79;

Account No. 114, Accounts Receivable—Retail, a debit balance of $260.80;

Account No. 151, "Deposits with Others," a debit balance of $950;

Account No. 165, "Office Furniture and Fixtures," $5,423.18, against which in Account No. 166, there is set off a reserve for depreciation of $322.92;

Account No. 196 (a), a debit balance of $306;

Account No. 196 (b), "John E. Hannan" (the bankrupt), a credit of $1,281.91;

Account No. 197, "Colonial Discount Corporation, Reserves Account," debit balance $476;

Account No. 197 (a), "Royal Collateral Corporation, Reserves Account," debit balance $106.84;

Account No. 199 (a) "C. I. T. Reserves Account," debit balance $314.86.

The aggregate of book figures gives assets roughly of $6,200 being the difference between the aggregate debit balance and the aggregate credit balances.

The monthly financial statements of the bankrupt's certified public accountant covered the period from April 30, 1938, through July 31, 1939. The capital stock was $6,000, and the surplus as therein represented is as follows:

| | |
|---|---|
| April 30, 1938 | $2,297.86 |
| May 31, 1938 | 2,056.19 |
| June 30, 1938 | 1,996.34 |
| July 31, 1938 | 2,224.15 |
| Aug. 31, 1938 | 1,770.69 |
| Sept. 30, 1938 | 731.41 |
| Oct. 31, 1938 | 4,662.05 |
| Nov. 30, 1938 | 4,255.82 |
| Dec. 30, 1938 | 4,095.39 |
| Jan. 31, 1939 | 4,341.97 |
| Feb. 28, 1939 | 4,524.57 |
| March 31, 1939 | 5,493.70 |
| April 30, 1939 | 913.20 |
| May 31, 1939 | 1,296.55 |
| June 30, 1939 | 2,565.93 |
| July 31, 1939 | 3,489.22 |

Referring now to the statement which forms the basis of this second specification of objection made to the C. I. T. Corporation, we find the net worth stated to be $16,575.82. This is in marked contrast with both the books of the bankrupt and the financial statements prepared by his accountant and submitted to him during the months referred to. The bankrupt failed to give a satisfactory explanation of the vital differences. Attention is directed on the asset side to the difference between cash on hand as stated in the financial statement to the C. I. T. Corporation of $1,993.90, as against the book record showing a cash position of $119.79 for that date. Other items of difference are readily noticed between the statements of the accountant and that submitted to the C. I. T. The total assets reported by the accountant as at March 31, 1939, appear to be $23,051.-

63, as against $30,461.13, in the accused financial statement, a difference of $7,409.-50. The referee points to the testimony of the accountant to the effect that he did not make a physical inventory of the accessories or miscellaneous items when preparing his balance sheet as at March 31, 1939, but adopted the figures as at January 31, 1939. The referee finds that the accountant used the cost and not the actual figure of the furniture and fixtures, and that there should be added to the accountant's statement of assets a sum of $2,703.40 in consequence thereof. I regret that I cannot find a convincing basis for the finding that such sum should be added to the inventory. For example, the referee refers to a calculation of cost and not actual value of furniture and fixtures, but the examination referred to of September 3, 1941 is not before me and apparently forms no part of the record. Moreover, it is to be noted that though, as the referee stated, the car inventory of the bankrupt was checked by a representative of the C. I. T., it does not appear that such checking involved more than a counting of the number of automobiles on hand, and did not attempt to be an appraisal thereof.

■ The objecting creditor has, of course, the burden of proving the grounds alleged in the specifications of objections, In re Schwartz, 2 Cir., 135 F.2d 362, but once evidence has thus been adduced to the satisfaction of the court, the burden shifts, Cohn v. Arkin, 2 Cir., 132 F.2d 724, to meet the case made out by the creditor. The referee observes:

"The creditor offered no proof as to the financial condition of the company as of the date of the statement. It contented itself with a showing of the condition as of the beginning and end of the month. This is not satisfactory proof or dis-proof of its condition as of an intermediate date."

Again:

"The creditor relies for its proof on a balance sheet report rendered to the bankrupt's firm by the accountant (Creditor's Exhibit 1). This report was compiled about ten days or two weeks after the end of the month."

■ The creditor certainly made out a prima facie case by introducing the report of the bankrupt's own accountant supplemented also by reference to the bankrupt's books. Had the bankrupt kept an adequate inventory it is possible that his true financial condition could have been disclosed as at the time of making of the alleged false financial statement to the credit company. It is true that there is no specification of objection recited against the inadequacy of the accounting methods; none the less, that does not relieve the bankrupt from meeting the prima facie case made out by the creditor. His records fail to do so.

■ The first specification charges the bankrupt with having induced the C. I. T. Corporation to extend credit also on the basis of a false statement, that bearing date September 21, 1938. In this statement the total assets are listed as $18,618.77, and the net worth $5,547.82.

Again with reference to the books and the accountant's statements, we find in the latter the total assets listed as $14,634.56. True, this also was at the end of the month and not on September 21, 1938, but the books do not sustain the discrepancy. Here it may be noted that as at September 21, 1938, the cash on hand and in banks was stated to be $2,938.71, whereas on August 31, 1938, cash on hand was but $342.78, and on September 30, 1938, $463.72. Conceivably balances in the middle of the month can be greater than those at the end of the month, but the burden at this point was on the bankrupt satisfactorily to explain the difference. That he by no means did. In the single item of cash on hand and on deposit, the referee cited the testimony of the witness Bulger, a divisional superviser of the C. I. T. Corporation. Bulger was asked whether he had made an independent check of the books of the bankrupt to determine whether the cash on hand and in the bank, as set forth in the statement dated September 21, 1938, was correct. His answer was: "Yes; did I misunderstand it?" Then followed argument of counsel which leaves the matter somewhat in doubt. Counsel sought to ascertain what he had learned from the bank. The question was objectionable and the objection was sustained. There the inquiry rested. It is regrettable that available proof on this subject was not adduced, as it should have been, from the bankrupt's books. From the sheets in evidence of the Manufacturers Trust Company it is impossible to say what the balance was on September 21st, but if we were to accept the conclusion of the referee that the mere checking of the statement was proof of the fact that the cash on hand was as represented in the statement, there still remains the incompleteness

of the bankrupt's books to account for the difference between the total assets set forth in the financial statement and the accountant's monthly reports to the bankrupt.

The third and remaining specification charges that the bankrupt obtained credit by reason of a false financial statement issued to the C. I. T. Corporation, November 20, 1939. This statement reflects the assets and liabilities as at October 31, 1939. Here attention is called by the objecting creditor to the following items:

Cash on hand and in banks—$1,261.44

Other aggregate assets, including accounts receivable, new automobiles, second-hand cars, automobile sundries and accessories, machinery, tools, shop equipment, furniture and fixtures, and other assets,
Total—$30,714.19.

The statement shows the net worth to be $4,820.87.

As in the instances of the two prior statements covered in the first and second specifications, the books and records of the bankrupt for the same date show total assets not reconcilable with the challenged financial statement and do not justify the bankrupt's claim of a net worth of $4,820.87.

The specifications of objection are sustained and the order of the referee reversed. Settle order on notice.